# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTONIO D. PYLE,  )
      Plaintiff,  )
        )
vs.  )     Civil Action No. 07-00360
        )     Judge Nora Barry Fischer
NEW YORK LIFE INSURANCE COMPANY,  )
      Defendant.  )

## OPINION

Antonio Pyle ("Plaintiff") brought this action against New York Life Insurance Company ("Defendant") for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.*, common law breach of contract, and bad faith pursuant to 42 Pa. C.S.A. § 8371. Before the Court for consideration is a Motion to Dismiss of New York Life Insurance Company [11]. For the foregoing reasons, Defendant's motion is hereby granted.

## FACTUAL BACKGROUND

Plaintiff was insured by Defendant on two separate life insurance policies, with a total death benefit of $100,000. (Docket No. 1, at ¶ 3). Plaintiff's father had purchased these life insurance policies on his son's behalf in 1965 and, prior to 1987, these policies had been completely paid and no further premiums were due. (Docket No. 1, at ¶ 3). Plaintiff alleges that, in 1987, Defendant's agent, Matt Alan Watts, recommended that Plaintiff surrender these policies and apply the cash value to a new policy. (Docket No.1, at ¶ 4). Plaintiff further alleges that Watts represented that Plaintiff would not be required to pay additional premiums on the policy, but that his benefit would increase over time.[1] (Docket No.1, at ¶ 4). Relying on the representation of "no further premiums," (*see*

---

[1]

In Support thereof, Plaintiff attaches a copy of a "Custom Designed Illustration,"

1

Docket No. 1, at ¶ 7) ("In fact, but for the representation that no further premiums would ever be due on the policies, [Plaintiff] would not have made the exchange, because he had sufficient life insurance through work and had no need for additional life insurance"), Plaintiff completed a life insurance application and Defendant issued a new life insurance policy to Plaintiff at policy number 42-715-811, with a face amount of $100,000, applying the cash values of the previously held insurance policies.  (Docket No 1., at ¶ 4-5) ("[N]o additional premiums would be due, yet by the time that [Plaintiff] reached aged 65, the net cash value would reach $122,081 and the net death benefit would reach $223,847").  Plaintiff contends that, based upon these representations, he understood that he had the option to purchase additional coverage; however, he would not be required to make any additional payments to "keep the policy in force." (Docket No. 1, at ¶ 6).[2]

In November of 2006, however, Plaintiff received a notice of premium due in the amount of $1,067, for policy number 42-715-811, attached to Plaintiff's annual policy statement.  (Docket No. 1, at ¶ 10). Under protest, Plaintiff paid this premium.  (Docket No. 1, at ¶ 11).  This federal action followed.

Complicating the instant action, prior to the filing of this case, Defendant settled a class action lawsuit in *Willson v. New York Life Ins. Co.,* Index No. 94/127804 (Sup.Ct. NY Co. Feb.1,

---

establishing, according to Plaintiff, that after the initial premium payment, no additional premiums would be due, yet when Plaintiff reached the age of 65, the net cash value would reach $122,081 and the net death benefit would reach $223,847.  (Docket No. 1, Exh. A; Docket No. 1, at ¶ 5-6).

[2]     Specifically, Plaintiff notes that a footnote to the "Custom Designed Illustration" contained an "option to Purchase Paid-up additions rider (OPP)," which allowed Plaintiff "... to pay a premium of up to 10 times the amount of the annual standard base premium without underwriting.  In other years, you may pay a premium of up to the amount of the annual standard base premium ... ." (Docket No. 1, at ¶6) (quoting OPP rider, Docket No. 1, Exh. A, at 3).

1996), arising from four consolidated complaints alleging, *inter alia*, that Defendant engaged in a nationwide scheme to induce class members to purchase life insurance on the basis of alleged misleading sales presentations. In the *Willson* action, the named plaintiffs brought an action on behalf of the class against Defendant for breach of contract, fraud, negligent misrepresentation, unjust enrichment and violations of New York General Business Law § 349, New York's consumer protection law. Specifically, the Complaint alleged that Defendant had "engaged in a nationwide scheme to induce Class Members to purchase life insurance policies based upon false or misleading sales presentations, policy illustrations, and other marketing or sales materials." On July 28, 1995, the parties executed a Stipulation of Settlement, as amended on November 8, 1995.[3] (Docket No. 11-3, Exh. A, pt. 2) ("Stipulation of Settlement") (hereinafter, "*Willson* Settlement Agreement"). On July 31, 1995, the Supreme Court of New York County entered an Order, certifying a nationwide class for purposes of settlement, ordering that adequate notice of settlement be given to the class and directing the forms and methods of notice as well as requirements for opting out of the class. On

---

[3]

       The Stipulation of Settlement at page 2 defined the claims brought by the class in *Willson*, which included, *inter alia*, "proposals to replace an existing policy or to use an existing policy's cash values by means of a surrender, withdrawal/ partial surrender, or loan to purchase or maintain another policy." (*Willson* Settlement Agreement, at 2-3).

       Furthermore, the *Willson* Court broadly defined the types of transactions released by the *Willson* Settlement Agreement:

> "Released Transactions" means the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies.

(*Willson* Settlement Agreement, at 18).

November 15, 1995, the New York Court held a fairness hearing as to the proposed settlement.[4]

Subsequently, on February 1, 1996, the *Willson* Court entered its "Findings of Facts, Conclusions of Law, and Final Order and Judgment," (s*ee* Docket No. 11-2, Exh. A, pt. 1) (hereinafter, "*Willson* Order"), in which it resolved objections from the class members, which consisted of individuals holding policies during the years 1982-1994 and allowed class members to opt-out of the class at any time prior to February 1, 1996.[5] (*Willson* Order, at ¶ 15). In the *Willson* Order, the Court set forth the potential relief offered by the *Willson* Settlement Agreement, including the Alternative Dispute Resolution process, or three types of "no fault" relief: optional premium loans, enhanced value policies, and enhanced value annuities (all of which are described in detail in the settlement agreement) (*Willson* Order, at ¶¶ 20-28). The Court concluded that the class met all

---

[4]

Once a class has been certified, a fairness hearing regarding class action settlement is held. *See* Manual for Complex Litigation, § 21.633. The proponents of the settlement are required to show that "the proposed settlement is 'fair, reasonable, and adequate.' " *Id.* at § 21.634 (citing *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In Re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d. Cir. 1995); Fed.R.Civ.P. 23(e)(1)( C). The trial judge is then required to make specific findings as to the "basis and justification for the settlement ... [t]he records and findings must demonstrate ... that the judge has made the requisite inquiry and has considered the diverse interests and requisite factors in determining the settlement's fairness, reasonableness, and adequacy." *Id.* at § 21.635.

[5]

Notably, one of the named plaintiffs in the *Willson* action specifically alleged that an agent of Defendant "told him that if he surrendered his old policy to make a single premium payment on his new policy, the policy would be fully paid-up with no more premiums due." (*Willson* Order, at 4-5). The plaintiff, Raymond E. Ferry, had purchased two separate life insurance policies in 1985, one in the amount of $10,000 and the other in the amount of $33,150. According to his Complaint against Defendant, despite being told he would owe no further premium payments, he "received a premium notice for the $33,150 policy in September 1994, and continue[d] to owe premiums on the $10,000 policy." (*Willson* Order, at 4-5).

requirements for class certification, including the requirements of adequate notice[6] and that the class representatives in the suit "adequately represent the Class." (*Willson* Order, at ¶29). Of particular significance here, in so holding, the Court found that (1) there were common issues of law and fact among the class members, including, "dividend and interest crediting rate practices and determinations or ... sales and illustration practices, and training and supervision with respect to those practices," (*Willson* Order, at ¶29)[7]; and (2) the named class members adequately represented the class insofar as the named class members had "a stake in the outcome of the litigation," and no named representative had "interests antagonistic to that of the Class," (*Willson* Order, at ¶29). The Court further held that the settlement itself was evidence of the adequacy of representation, opining that "the combination of the individualized ADR Process and the no-fault Class Relief benefits accommodates much better than class actions are usually able to any variations between Class Members." (*Willson* Order, at ¶29). Furthermore, the *Willson* Court held that Defendant gave adequate notice of the class action litigation, in compliance with its own July 1995 order. (*Willson*

---

[6]

The Notice of Class Action (Docket No. 20, Exh. 1) provided:

You may exclude yourself from the Class by sending a formal, written request for exclusion with respect to each Policy for which you wish to be excluded that complies with the requirements described in the Notice. The request must be sent to the Clerk of the Court at the following address ... If you request exclusion, *(i)* you lose all rights to elect any of the four types of relief being made available under the proposed settlement, *(ii)* you may not file any objection to the proposed settlement, *(iii)* you will not be bound by any orders or judgments in this case.

(Docket No. 20, Exh.5) (emphases in original).

[7]

The Court also noted that, in light of the available ADR process, class members had particular ability to individually adjudicate any specific individual factual or legal issues arising as a result of Defendant's conduct, including "reliance, causation and damages." (*Willson* Order, at ¶29).

Order, at ¶45).

The *Willson* Order certified a settlement class defined as follows:

A Settlement Class is hereby finally certified (the "Settlement Class") consisting of all persons or entities (the "Class Members") who had at the earlier of *(i)* July 25, 1995 and *(ii)* the time of the policy's termination, an ownership interest in one or more whole life insurance or universal life insurance policies issued by New York Life Insurance Company or New York Life Insurance and Annuity Corporation (referred to as "New York Life") in the United States from January 1, 1982 through December 31, 1994 (the "Class Period"), including A.D. 82 and subsequent Whole Life, Employees Whole Life, Modified Premium Whole Life and Survivorship Whole Life policies ("Universal Life Policies") (referred to collectively as the "Policies"), but does not include persons or entities (unless such persons or entities are Class Members by virtue of their ownership interest in other Policies) *(i)* who were represented by counsel and who signed a document pursuant to a settlement of a claim or an actual or potential lawsuit that releases either or both defendants from any further claims concerning one or more Policies ... .

(*Willson* Order, at 71) (emphases in original).

The Stipulation of Settlement also set forth the types of claims settled by the agreement. The types of claims settled included those claims "arising from and relating to" the following:

(i) the sale of whole life insurance by what New York Life refers to as the Premium Offset Proposal concept, (ii) the sale of universal life insurance by means of what New York Life refers to as the Single or Limited Payment Universal Life Concept, (iii) the establishment and illustration of dividend scales, interest crediting rates and cost of insurance and administrative charges, (iv) the sale of life insurance policies not as insurance but as pension or retirement plans, investment or savings accounts, tuition funding or mortgage protection plans, or other types of investment, savings, thrift or retirement vehicles, (v) the alleged failure to tell policyowners that a substantial part of the premiums paid would not go toward an investment or savings, thrift or retirement vehicle (but would be used to pay commissions, other sales and administrative charges and mortality charges) and the alleged failure to tell policyowners the true rate of return that would be earned and how a life insurance policy compared with other investment vehicles, and (vi) *proposals to replace an existing policy or to use an existing policy's cash values by means of surrender, withdrawal/ partial surrender, or loan to purchase or maintain another policy . . .*

(*Willson* Settlement Agreement, at 2) (emphasis added). The *Willson* Order provided that any

potential class member who did not wish to be represented by the class representatives must have opted-out in writing within fifteen days of the Settlement hearing. (*Willson* Order, at ¶ E).

Moreover, the *Willson* Settlement Agreement also included a release, which provided that:

> Plaintiffs and all Class Members hereby expressly agree that they shall not now nor hereafter institute, maintain or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class or any other person, and release and discharge the Releasees from, *any and all* causes of action, claims, damages ... that have been, could have been, may be or *could be alleged or asserted now or in the future* by Plaintiffs or any Class Member against the Releasees in the Actions or in any other court action . . . on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions ... .

(*Willson* Settlement Agreement, at 56) (emphases added).  The release language continued that said released transactions included, *inter alia*, "without limitation":

> (i) any and all of the acts, omissions, facts, matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Actions;
> (ii) any or all of the acts, omissions, facts, matters, transactions or occurrences, or any oral or written statements or representations allegedly made in connection with or directly or indirectly relating to the Released Transactions, including without limitation any actions, omissions, or oral or written statements or representations relating to:
> ...
> *(l)* the use of an existing policy's cash value or cash-surrender value by means of surrender, withdrawal/ partial surrender or loan to purchase or maintain a Policy.

(*Willson* Settlement Agreement, at 57-59) (emphasis in original).  Additionally, the release provided that the *Willson* Plaintiffs and Class Members, as part of the release,

> acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally and forever to settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any Actions).

(*Willson* Settlement Agreement, at 61-62).  In the release, the class members "expressly agree[d]" that they cannot, after the final date of the settlement, institute an action against Defendant in any court for claims "related to the Released Transactions." (*Willson* Settlement Agreement ¶ 57-59).[8]

Furthermore, the *Willson* Settlement Agreement included a provision which provided that *res judicata* bars all future claims by class members.  Specifically, the Order provided that the Final Order and Judgment "shall forever be binding on, and shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by . . . all [sic] settlement Class Members." (*Willson* Settlement Agreement, at 72-73). The *Willson* Court also issued an injunction as part of its final Order, enjoining "[a]ll Class Members ... from: (a) filing, commencing or prosecuting any lawsuit ... in any jurisdiction based on or relating to the facts and circumstances underlying the claims and causes of action in this transaction, or to the Released Transactions (as that term is defined in the Settlement Agreement)." (*Willson* Settlement Agreement, at 72).

---

[8]
> Said transactions included, *inter alia*:
>
> any and all of the acts, omissions, facts, matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Actions; any and all of the acts ... or any of the oral or written statements or representations allegedly made in connection with or directly or indirectly relating to the Released Transactions including, without limitation, any act ... relating to: ... (c) the number of out-of-pocket payments that would need to be paid for a life insurance policy or policies; (d) the ability to keep or not to keep the Policies In-Force based on a fixed number and/ or amount of premium payments ... .

(Docket No. 11, Exh. A, at ¶H).  In its Final Order and Judgment, the Court (1) incorporated the Release and "forever discharg[ed] the [Defendant] from any claims" arising from the above recited transactions; and (2) Ordered that the Settlement "bar[s] and enjoin[s] all Class Members who have not been excluded from the Class from instituting, continuing, maintaining, or asserting against [Defendant] any actions or claims arising from or related to" the aforementioned transactions. (Docket No. 11, Exh. A, at 71-72).

Finally, the *Willson* Court "retain[ed] jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order and Judgment, and for any other necessary purposes." (*Willson* Order, at 74).

According to Defendant, Plaintiff did not opt out of the class prior to February 1, 1996, nor does Plaintiff's name appear on a list of opt-out policy holders, incorporated as part of the settlement agreement. (Docket No. 14, Exh. B, at 7-93). On June 25, 1996, a New York appellate court affirmed the *Willson* Order. Subsequently, the United States Supreme Court denied a writ of certiorari.

## PROCEDURAL BACKGROUND

On March 19, 2007, Plaintiff filed this Complaint. (Docket No.1). Defendant filed the instant motion on June 14, 2007. (Docket No. 11). On July 18, 2007, Plaintiff filed Brief of Antonio D. Pyle in Opposition to New York Life Insurance Company's Motion to Dismiss. (Docket No. 17). On August 1, 2007, Defendant filed its Brief in Support of New York Life Insurance Company's Motion to Dismiss. (Docket No. 18). On August 17, 2007, the Court *sua sponte* ordered Plaintiff to file a supplemental brief on or before August 31, 2007, as to the applicability of the Pennsylvania Supreme Court's recent decision in *Toy v. Metropolitan Life Ins. Co.,* 928 A.2d 186 (Pa. 2007), which the Defendant cited and relied upon in its reply brief. (Docket No. 19). In addition, the Court ordered Defendant to file a supplement attaching a copy of the notice of class action lawsuit in *Willson* on or before August 31, 2007. On August 27, 2007, Defendant filed a Supplement of Defendant New York Life Insurance Company to its Motion to Dismiss, in which it attached the following documents (1) the "Notice of Class Action, Proposed Settlement, Settlement Hearing and Right to Appear" pertaining to *Willson v. New York Life Ins. Co.,* Index No. 94-127804 (N.Y. Sup.

9

Ct. Feb. 1, 1996); (2) "Cover Letter for Class Notice"; (3) information entitled "Answers to Questions You May Have About the Proposed Settlement"; and (4) "Publication Notice" to Class Members. (Docket No. 20). Plaintiff filed its Supplemental Brief Regarding *Toy v. Metropolitan Life Ins. Co.* in response to this Court's Order on August 30, 2007. (Docket No. 21).

## STANDARD

Under *Bell Atlantic v. Twombly*,---U.S.---, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if the Plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Recently, the Third Circuit addressed the *Twombly* decision and its effect on the appropriate pleading standard, finding that despite the new "plausibility" language, *Twombly* does not demand either a heightened pleading of specific facts or impose a probability requirement on plaintiffs. *Phillips v. County of Allegheny*, --- F.3d ----, 2008 WL 305025, at *5 (3d Cir. 2008). In *Phillips*, the Third Circuit interpreted *Twombly* as a reaffirmation of both the notice pleading standard under Federal Rule of Civil Procedure 8 and the general standard in a Rule 12(b)(6) motion. *Id.*, 2008 WL 305025, at *3. However, the Third Circuit identified "two new concepts" within the *Twombly* decision: (1) a plaintiff's obligation under Rule 8 "to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," but Rule 8 requires "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,' " in other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, 2008 WL 305025, at *4 (citing *Twombly*, 127 S.Ct. at 1964-65, 1966, & n.3); and (2) the " 'no set of facts' language [from *Conley v. Gibson*, 355 U.S. 41 (1957)] may no longer be used as part of the Rule 12(b)(6) standard," *id.*, 2008 WL 305025, *4.

In short, the Court provided the following guidance as to *Twombly's* effect:

> Thus, under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a showing that "the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.

*Phillips*, 2008 WL 305025, at *5(citing *Twombly*, 127 S.Ct. at 1964).

"In determining the sufficiency of the complaint the court must accept all of plaintiffs' well-pled material allegations as true and draw all reasonable inferences therefrom in favor of plaintiffs." *McCliment v. Easton Area School Dist.*, Civil Action No. 07-0472, 2007 WL 2319768, at *1 (E.D. Pa. Aug. 10, 2007) (citing *Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997)); *see also Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). "The issue is not whether a [Plaintiff] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)). Under this standard, a complaint will be deemed to have alleged sufficient facts if it adequately puts the plaintiff on notice of the essential elements of defendant's claims. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997). Nor must the court accept legal conclusions set forth as factual allegations. *Bell Atlantic Corp.*, 127 S.Ct. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Overall, "courts have an obligation ... to view the

complaint as a whole and to base rulings not upon the presence of mere words, but rather, upon the presence of a factual situation which is or is not justiciable.  We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner."  *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).

While a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits, a court may consider some evidence beyond a complaint on a motion to dismiss "including public records ..., documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case."  *Core Const. & Remediation, Inc. v. Village of Spring Valley, NY*, No. Civ.A. 06-CV-1346, 2007 WL 2844870, at *2  (E.D. Pa. Sept. 27, 2007) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 and n.2 (3d Cir. 1995)) (internal citation omitted).[9]

Finally, the defendant bears the burden to demonstrate that the complaint fails to state a claim.  *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

---

[9]

In this case, the Court reviewed a number of these types of documents appearing in the record, outside of the Complaint, including: (1) "Custom Designed Illustration" (Docket No. 1, Exh. A); (2) *Willson v. New York Life Ins. Co., et. al.*, Supreme Court of the State of New York, New York County, Index. No. 94/127804, "Findings of Fact, Conclusions of Law and Final Order and Judgment" (Docket No. 11, Exh. A, parts 1-2); (3) *Willson v. New York Life Ins. Co., et. al*, "Second Supplemental Affidavit of Michael T. Jones, including "Opt Out List"(Docket No. 11, Exh. B, parts 1-2); (4) *Willson v. New York Life Ins. Co.*, "Consolidated Amended Complaint"(Docket No. 11 Exh. C); (5) various publications referencing the *Willson* settlement  (Docket No. 11, Exhs. E-H); (6) *Pyle v. New York Life Ins. Co.*, "Affidavit of Edward Kaminski' (Docket No. 11, Exh. I); (7) *Willson v. New York Life Ins. Co.*, "Notice of Class Action, Proposed Settlement, Settlement Hearing and Right to Appear" (Docket No. 20, Exh. D-1); (8) *Willson v. New York Life Ins. Co.*, "Cover Letter for Class Notice" (Docket No. 20, Exh. D-2); *Willson v. New York Life Ins. Co.*, "Question and Answer Booklet" (Docket No. 20, Exh. D-3); (9) *Willson v. New York Life Ins. Co.*, "Publication Notice" (Docket No. 20, Exh. D-4).

# ANALYSIS

In Support of its Motion to Dismiss, Defendant argues that Plaintiff's claims are barred because he is member of the settlement class in *Willson*. (Docket No. 12, at 11). Specifically, Defendant contends that Plaintiff is a member of the *Willson* class because (1) he received constitutionally adequate notice of settlement, and (2) he did not opt out as required of class members in order to pursue future claims by the settlement argument. (Docket No. 12, at 17). Furthermore, Defendant argues that, as a member of the *Willson* class, Plaintiff's claims are barred by virtue of the *Willson* release, incorporated as part of the settlement order, releasing Defendant from subsequent litigation related to the *Willson* action, brought by members of the *Willson* class. (Docket No. 12, at 17-19; Docket No. 11, Exh. A, part 2, at pp. 56-62). Furthermore, Defendant contends that Plaintiff is enjoined from bringing his claims by virtue of the injunction embedded in the *Willson* settlement, barring any future claims by members of the *Willson* class. (Docket No. 12, at 8). In response to Defendant's arguments, Plaintiff asserts that his claims are not precluded by the *Willson* settlement, insofar as his claims did not arise until ten years after the agreement. (Docket No. 17, at 1). Specifically, Plaintiff contends that his claims are not barred by the release, as the release is "not so broad" as to include claims that had not yet arisen at the time of the settlement agreement. (Docket No. 17, at 3). Furthermore, Plaintiff argues that he did not receive adequate notice of the class action settlement nor was Plaintiff adequately represented by the *Willson* class and, therefore, the judgment set forth in *Willson* is not binding, as he is not a member of the *Willson* class.

As a preliminary matter, the Court notes that neither Defendant nor Plaintiff has properly briefed the instant motion as to the applicable law for purposes of the analysis as to potential

application of the *Willson* Order. The Court notes, first of all, that the *Willson* Settlement Agreement provides: "All terms of this Settlement Agreement and ancillary agreements shall be governed by and interpreted according to the substantive law of the *State of New York*, excluding its conflict of laws provisions." (*Willson* Settlement Agreement, at 76). Additionally, in the Settlement,

> [a]ll parties agree that this Settlement Agreement is clear and unambiguous and was drafted by counsel for the parties at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, its intent or the circumstances under which it was made or executed.

(*Willson* Order, at 78). Furthermore, a district court sitting in determination of the preclusive effect of a class action settlement agreement is required to give full faith and credit to said agreement "in accordance with the rendering state's law on the preclusive effect of judgments entered upon class action settlements." 3 MCLAUGHLIN ON CLASS ACTIONS Vol. 2, at § 6:28 (citing *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996)).[10]

In order to determine the applicability of the *Willson* Order to Plaintiff's claims, the Court turns first to the issue of whether or not Plaintiff is a member of the *Willson* class. Plaintiff has

---

[10]

Furthermore, under Pennsylvania choice of law rules, which a district court sitting in diversity must apply, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), the Court is to apply the claim preclusion law of the state that entered the prior judgment. *Wilkes v. Phoenix Home Life Ins. Co.*, 902 A.2d 366 (Pa. 2006) (citing RESTATEMENT 2d OF CONFLICTS OF LAWS § 97 (1998); *see also Gregory v. Chehi*, 843 F.2d 111 (3d Cir. 1988) (noting that "[a] federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state judgment the same effect as would the adjudicating state" and holding that where there are issues of claim and issue preclusion, the Court must look to the preclusion laws of the state rendering the judgment) (citations omitted). Here, the judgment at issue for purposes of claim preclusion was rendered by a New York state court. Therefore, New York law applies to Defendant's defense that Plaintiff's instant claims are barred by the *Willson* Order. *Id.* at 377 (noting that, like other states, the rule in Pennsylvania is to apply "*res judicata* doctrine of the court where the judgment under collateral attack was rendered to determine if and when a collateral attack on that judgment is permissible") (citing *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 87) (1987) (citations omitted)).

argued that he is not a member of the *Willson* class and is, therefore, not barred from the instant litigation because (1) he failed to receive adequate notice of the *Willson* settlement, and (2) he was not adequately represented by the class in *Willson*.

In the *Willson* Order (which incorporated the *Willson* Settlement Agreement), the New York Court defined the settlement class as:

> all persons or entities ... who had at the earlier of *(i)* July 25, 1995 and *(ii)* the time of the policy's termination, an ownership interest in one or more whole life insurance or universal life insurance policies issued by [Defendant] in the United States from January 1, 1982 through December 31, 1994 ... but does not include persons or entities who ... timely excluded themselves from the Settlement Class pursuant to the July Order. A list of those persons who have excluded themselves from the Class is attached as Exhibit E ... .

(*Willson* Order, at 71-72) (emphasis in original). The *Willson* Settlement Agreement encompassed claims relating to "proposals to replace an existing policy or to use an existing policy's cash values by means of a surrender, withdrawal/ partial surrender, or loan to purchase or maintain another policy." (*Willson* Settlement Agreement, at 2-3). The parties also defined released transactions as those pertaining to

> the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/ or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation or, the Policies.

(*Willson* Settlement Agreement, at 18).

In his Complaint, Plaintiff alleges that in 1987, he surrendered the cash value of certain life insurance policies and, in exchange, was issued a new whole life insurance policy at policy number 42-715-881. (Docket No. 1, at ¶¶ 4, 8). Plaintiff does not dispute that, as of July 25, 1995, he had an ownership interest in the subject policy. Nor does Plaintiff allege that, at any relevant time,

Plaintiff's policy was terminated. Therefore, for purposes of the settlement agreement, Plaintiff fits within the description of the settlement class because he is a person having an ownership interest in a whole life insurance policy issued by Defendant in the United States between the class period of January 1, 1982 and December 31, 1994. Nor is Plaintiff excluded from this class as he is not listed among those individuals who excluded themselves from the class, namely, he did not opt-out of the settlement. (Docket No. 11, Exh. B, parts 1-2).

Furthermore, because Plaintiff's claims are related to transactions involving the surrender or an existing policy toward the purchase of new life insurance policies, Plaintiffs claims are identical to both those defined by the *Willson* Order as a type of claim settled by the agreement and as a type of claim released by the agreement. Thus, a plain reading of the *Willson* Order reveals that because Plaintiff qualifies as a "Class Member" as defined by the settlement agreement, his claims come within the parameters of the agreement and order and Plaintiff did not opt-out, Plaintiff is a member of the *Willson* class.

However, the inquiry does not end there. Under the Federal Rules and applicable case law, a plaintiff is only a member of a class if he or she received adequate notice of the action and was adequately represented by the representative plaintiffs. *See* Fed.R.Civ.P. 23(a)(4); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In the *Willson* Order, the Court found that, in accordance with Article 9 of the New York Civil Practice Law and Rules ("CPLR"),[11] the *Willson* settlement met all of the requirements for class certification. Specifically, in determining adequacy

---

[11]

Article 9 of the CPLR is "substantially similar" to Rule 23 of the Federal Rules of Civil Procedure. ABA SURVEY OF STATE CLASS ACTION LAW 2007-2008, at 469. In addition to Fed.R.Civ.P. 23(a) requirements of numerosity, commonality, typicality and adequacy, CPLR 901(a) also includes the superiority requirements found in Fed.R.Civ.P. 23(b)(3). *Id.* at 470.

of representation, the Court found (1) that the class was adequately represented based upon the qualifications of counsel; and (2) the relationship between the interest of class representatives and other class members was sufficient. (*Willson* Order, at 21-23). Furthermore, the Court found notice of the class action to be adequate. (*Willson* Order, at 25-31; 45-47).

In *Willson*, the Court held that the members of the class (individuals holding life insurance policies purchased between 1982-1994) were given adequate notice and were adequately represented by the representative plaintiffs. In reviewing the *Willson* Order and settlement, the Court will not challenge or review the terms of the *Willson* Order relative to the adequacy of notice and representation by the named plaintiffs and counsel. (*Willson* Order, at 21-22; 25-28). *See In Re Diet Drugs,* 431 F.3d 141 (3d Cir. 2005) (holding that members of a class were not free to relitigate issues of adequacy of class notice and representation to the extent that "the terms of the [settlement] agreement, itself, are not appropriate for collateral review") (citing *In re Orthopedic Bone Screw Products Liab. Litig*., 350 F.3d 360, 364-65 (3d Cir. 2003)). Nevertheless, from a broader perspective, the Court will consider both the adequacy of notice and representation.

First, as to notice, due process does not require that an individual receive actual notice for notice to have been deemed sufficient; rather, due process merely requires adequate notice. *Gonzalez v. City of New York*, 396 F.Supp.2d 411 (S.D.N.Y. 2005). The *Willson* Court made specifics findings with regard to adequacy of notice, including, *inter alia*, that publication notices were sufficient and widely published. (*Willson* Order, at 26). Additionally, the Court noted the number of individual notices mailed and additional attempts to individual contact class members. (*Willson* Order, at 27). Extensive press coverage also afforded additional notice to class members, in addition to the extensive formal notice initiated by Defendant. (*Willson* Order, at 28) (citing *In*

*Re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 169 (2d Cir. 1987)). Additionally, the *Willson*

Court considered objections from potential class members as to the adequacy of notice, who argued

that notice was inadequate because they had not individually received notice or that their notice had

arrived late. (*Willson* Order, at 45). The Court rejected these objections noting that "the

combination of individual[ly] mailed and publication notice constitutes the best notice practicable

under the circumstances." (*Willson* Order, at 46). In addition to the findings made by the *Willson*

Court with respect to the adequacy of notice, Defendant offered evidence of the type of notice

discussed there, namely evidence of publication of the proposed settlement in various local

newspapers as well as copies of notification sent to individual potential class members. (*See* Docket

No. 20, Exhs. 1-4; Docket No. 11, Exhs. D-H). As such, the Court agrees with the findings of the

*Willson* Court that notice of the settlement was adequate.

Second, as to representation, class members are generally adequately protected when the

individual plaintiffs "possess the same interest and suffer the same injuries as the class members."

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (citing *East Tex. Motor Freight*

*System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to*

*Stop the War*, 418 U.S. 208, 216 (1974) (quotations omitted))). While adequacy of representation

usually involves an inquiry as to whether or not the named plaintiffs possess the same interests or

have suffered the same injuries as all members of the class, courts have allowed class members to

attack a class action settlement if said members can show that the plaintiff's rights were not

adequately protected by the class. *See Amchem Products, Inc.*, 521 U.S. at 624-626 (1997). (holding

that, where a class settlement purported to include both "currently injured" and "exposure only"

plaintiffs in an asbestos case, neither the class certification requirement under 23(b)(3), which

requires commonality of issues among class members, nor the class requirement under Rule 23(a)(4), which requires that class members be adequately represented, were met). Such unprotected parties are not provided with the required due process, thus they must be permitted to collaterally attack the class action settlement. *In Re Real Estate Title and Settlement Services Antitrust Litigation*, 869 F.2d 760 (3d. Cir. 1989). In *Stephenson v. Dow Chemical Co.*, 273 F.3d 249 (2d Cir. 2001), *aff'd with regard to this issue without opinion* 539 U.S. 111 (2003), for example, the Second Circuit held that, where plaintiffs' injuries did not manifest themselves until after the settlement funds had been depleted, the plaintiffs were entitled to bring a collateral attack against the manufacturer of agent orange for said injuries. *Id*. at 261. However, based on the principles of full faith and credit, courts have been reluctant to allow a collateral attack on a class action settlement and have chosen instead to uphold state court judgments, especially where the class members attempting to collaterally attack the settlement are asserting claims identical to those released in the settlement agreement and had the opportunity to opt out, but failed to do so. *See New York Life Ins. Co. v. Robinson*, 735 So.2d 463 (Ala. 1999); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985); *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 378 (1996) (holding that, where plaintiffs did not dispute that they were holders of stock, as defined by the settlement agreement, and had not opted out, the plaintiffs were bound by the settlement agreement).[12] In the interest of finality of a judgment "once a court has decided that the due process protections did occur for a particular class member or group of class

---

[12]

     *See also* MCLAUGHLIN ON CLASS ACTIONS, Vol. 2, at § 6:29 ("Recognizing the strictly limited scope of examination of prior proceedings to ensure that minimum procedural safeguards were present, courts have repeatedly rejected efforts to circumvent the preclusive effect of a class action settlement on claims pending in other courts by collaterally attacking the adequacy of representation in prior settlement proceedings," and citing case law to that effect at n. 10).

members, the issue may not be relitigated." *In Re Diet Drugs*, 431 F.3d at 146.

Furthermore, while the court in *Stephenson* permitted plaintiffs to collaterally attack the settlement agreement, the Court there addressed the adequacy of the settlement agreement in regard to plaintiffs whose injuries manifested themselves after the settlement agreement and held that the plaintiffs there could attack the settlement agreement because "there ha[d] been no prior adequacy of representation with respect to individuals whose claims arise after the depletion of the settlement fund." *Stephenson*, 273 F.3d at 258. In this case, however, the *Willson* Court addressed the adequacy of representation with respect to claims such as that brought here by Plaintiff, namely, claims that had not yet arisen at the time of the settlement agreement. (*See* Docket No. 17, at 5). Specifically, the parties agreed to the following in their settlement:

> In connection with this Release, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected , or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Plaintiffs and Class Members in executing this Release fully, finally and forever to settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any Actions).

(*Willson* Settlement Agreement, at 62). While Plaintiff argues that "the release itself is not so broad" as to include class members whose claims had not yet arisen, (Docket No. 17, at 3), the release does, indeed, include in its class membership individuals whose claims were *unknown* at the time of the settlement agreement. Furthermore, the *Willson* Court heard and resolved an objection to the scope of the release as it pertained to individuals whose claims had not yet arisen:

> One objector objects that the release is overbroad, because it releases claims not contained in the Complaint. That objection is without merit. The Complaint includes allegations relating to all aspects of New York Life's sale and subsequent

treatment of the policies and policyowners encompassed by the Class definition. Thus, even if there were a requirement of correspondence, the release fairly corresponds both to the scope of the allegations made and the relief to be made available to remedy the alleged harm. In any event, adequate class representatives may release even claims that were not - - and could not - - have been brought in the settled action.

(*Willson* Order, at 51) (citing *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 34 (1st Cir. 1991); *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)).[13]

Plaintiff encourages the Court to rely on *Stephenson* notwithstanding the fact that the Second Circuit decided *Stephenson* in 2001, several years after the *Willson* settlement. While the Second Circuit in *Stephenson* relied upon cases decided after the settlement agreement at issue there in determining that future claimants to a 1984 settlement agreement could collaterally attack the same (specifically, *Amchem Products* and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)), after-decided cases should not be applied insofar as the prior court (class action settlement court) could not have followed said case law in rendering its judgment. *See* 3 MCLAUGHLIN ON CLASS ACTIONS, Vol.2, at § 6:29 (noting "*Stephenson's* authorization of an evaluation of adequacy of representation on collateral review through a post hoc assessment of the fairness that class members ultimately

---

[13]

Additionally, while Plaintiff relies upon the Supreme Court's decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court finds that case entirely distinguishable insofar as there, the litigation had only reached class certification stage and the issue concerned whether the class seeking certification adequately represented the interests of individuals as required by Rule 23 of the Federal Rules of Civil Procedure. The Court held that a District Court could not approve a class where the adequate representation inquiry is not met because the class failed to take into account the disparity between categories of plaintiffs. *Id.* at 594. Rather, the *Willson* Court held that the "inquiry serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Id.* Here, however, the *Willson* Court did complete an inquiry into the adequacy of representation, including as it pertained to future claimants. The Court is bound to that judgment and Plaintiff is, therefore barred from relitigating the adequacy of representation. *In Re Diet Drugs*, 431 F.3d at 146.

obtain-based on legal standards not in effect when the settlement was negotiated, approved and affirmed- could have destabilizing implications for class action settlement. Without the reasonable expectation of the finality of judgments entered on settlements, the utility of class actions to resolve disputes globally would be severely undermined"). Regardless of the timing of *Stephenson*, courts have criticized the same and declined to follow such a broad rule allowing collateral attack insofar as it "undermines the finality, clarity and predictability of judgments entered on a class action settlement." *Id*. (citing *In Re Diet Drugs Products Liability Litigation*, 431 F.3d 141, 146 (3d Cir. 2005); *In Re Prudential Ins. Co. of America Sales Practices Litigation*, 314 F.3d 99(3d Cir. 2002); *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1563 (3d Cir. 1994); *Prezant v. DeAngelis*, 636 A.2d 915, 935-26 (Del. 1994) (quotations omitted)). Furthermore, the Second Circuit later clarified its position in *Stephenson*, noting that deference should be given to the court approving the settlement with regard to its determination of adequacy of representation. *Id* (citing *Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165 (2d Cir. 2006), *cert. denied*, 2006 WL 1880579 (2006)).

Additionally, Plaintiff's claims here are distinguishable from cases where courts have held that plaintiffs whose injuries are manifest only after the execution of the settlement, in that Plaintiff has not properly pled that his claims failed to manifest themselves until after the settlement agreement in such a way that he was not adequately represented for purposes of his due process rights. Rather, Plaintiff has alleged that he was injured by misrepresentations made by Defendant's Agent, Watts, in 1987. (Docket No. 1, at 2). Furthermore, his allegations that Defendant's conduct was in violation of Pennsylvania consumer protections laws and were in breach of contract and bad

faith are, again, premised on these representations made by Watts. *Id*. at 3-8.[14] As discussed *supra*, these types of representations are both a type of claim settled by the agreement and a type of transaction released by the agreement, insofar as both the settled and released claims include claims premised on solicitation of existing policy owners and transactions related to the surrender of existing policies and the purchase of new policies using the cash value. (*Willson* Settlement Agreement, at 3, 18). Plaintiff has, therefore, not pled that he had an injury of which he could not have been aware at the time of the settlement agreement, rather he pled an injury that fits squarely within the class as defined by the settlement agreement. Because Plaintiff chose not to opt out of said class, he remains a part of the class and is therefore bound by the settlement agreement. Furthermore, because Plaintiffs' claims fit within the definition of the claims settled in *Willson*, Plaintiff is a member of the class.

Having determined that Plaintiff is a member of the *Willson* class, the issue becomes whether the *Willson* Order applies to Plaintiff's claims, with regard to *res judicata*, release or injunction. In the instant matter, Defendant has argued that a release and injunction embedded within the *Willson* settlement agreement precludes Plaintiff's action, insofar as the release and injunction enjoin any class members, as defined by the settlement, from pursuing claims also defined in the agreement as "released transactions." Defendant has further argued that Plaintiff's claims are barred by the doctrine of *res judicata*. Therefore, the issue here is the preclusive effect of the New York state

---

[14]    The Court further notes that Plaintiff's claims here are nearly identical to those brought by the named plaintiffs on behalf of the class. Specifically, violations of consumer protection fraud and breach of contract. Similarly, Plaintiff's actual injury is nearly identical to those claimed by several named plaintiffs, specifically that Defendant made certain misrepresentations through one of its agent in procuring actions from Plaintiff, i.e., the surrender of his policy for a new policy.

court judgment entered upon the *Willson* class action settlement. This Court is required to apply New York law in determining whether Plaintiff's claims are precluded by the *Willson* settlement. The Court will accordingly consider the preclusive effect of the *Willson* settlement in accordance with New York law.

The *Willson* settlement agreement is a contract and, therefore, is to be interpreted as such according to the law of contracts of the state of New York. *See Nycal Corp. v. Inoco PLC*, 988 F.Supp. 296 (S.D.N.Y. 1997); *Playboy Enterprises Intern., Inc. v. On Line Entertainment, Inc.*, Civil Action No. CV 00-6618, 2004 WL 626807, at *2 (Mar. 29, 2004) (citing *Downes v. O'Connell*, 103 F.Supp. 2d 579, 582 (E.D.N.Y. 2000); *Willgerodt v. Hohri*, 953 F.Supp. 557, 561 (S.D.N.Y. 1997); *Hest v. New Amsterdam Casualty*, 268 F.Supp. 623 (D.S.C. 1967)). Under New York law, a settlement agreement will be read as a whole, with every part read in reference to the whole. *Consolidated Edison, Inc. v. Northeast Utilities*, 332 F.Supp. 2d 639, 646 (S.D.N.Y. 2004) (citing *Westmoreland Coal Co. v. Entech*, 100 N.Y.2d 352 (2003)) (citations omitted). New York contract law, including law pertaining to interpretation of a settlement agreement, requires the Court to look to the intent of the parties. *Id.* at 646 (citing *Golden Pac Bancorp. v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 514 (2d Cir. 2001) (citations omitted)). Furthermore, in interpreting a release embedded in a settlement agreement, the "scope of the release turns on the controversy being settled and the purpose for which the release was actually given." *Id.* at 646. Like a contract, where a release in a settlement agreement is unambiguous, "it must be enforced according to its terms." *Id.* (citations omitted).

Here, the Court finds that the settlement agreement, as embodied in the Stipulation of

Settlement executed by the New York court, is unambiguous.[15]   Furthermore, as the Court has discussed *supra*, the Court finds that, based upon a reading of the Stipulation of Settlement on its face, Plaintiff is a member of the *Willson* class and is, therefore, barred by *res judicata* and enjoined from pursuing the instant litigation. Moreover, the release applies to Plaintiff's claims and, therefore, Plaintiff is precluded from bringing the instant claims.

The Final Judgment and Order of the *Willson* Court (1) provides that *res judicata* bars all other class members from future claims; (2) enjoins class members from "commencing or prosecuting any lawsuit ... based on or relating to the facts and circumstances underlying the claims and causes of action in this action, or to the Released Transactions (as that term is defined in the Settlement Agreement); and (3) releases any future claims by class members." (*Willson* Order, at 72-74).

First, as to *res judicata*, the *Willson* Settlement Agreement provides:

The terms of the Settlement Agreement and this Final Order and Judgment, including all exhibits and supplemental exhibits thereto, shall forever be binding on, and shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by, the plaintiffs and all other settlement Class Members, as well as their heirs, executors and administrators, successors and assigns.

(*Willson* Order, at 72-73). In so ordering, the *Willson* Court explicitly recognized the preclusive effects of class action settlements on future claims:

Class actions are predicated on the notion that the interests of all class members are fully represented through class representatives and class counsel. It is as if each sues

---

[15]

Furthermore, the Court notes that the *Willson* Order provides that "all parties agree that this Settlement Agreement is clear and unambiguous and was drafted by counsel for the parties at arm's length ... ." (*Willson* Order, at 78).

> individually in a consolidated action. All party-members, *including absent members and future members*, are equally bound by the strictures of the class action judgment.

*Muhammad v. Warithu- Deen Umar* 98 F.Supp. 2d 337, 340 (W.D.N.Y. 2000) (citations omitted) (emphasis added). Because a class member's individual claim "merges into the judgment granting relief," thereby "extinguishing" the class member's individual claim, the doctrine of *res judicata* bars any subsequent claims by a class member already litigated by the court rendering the judgment on the class action settlement. *Id.* at 341. Members of a class who are adequately represented by the parties to the class are bound by the judgment rendered on the class action settlement. *Hansberry v. Lee* 311, U.S. 32, 42-43 (1940).

Here, the *Willson* Court went so far as to specify that *res judicata* bars any subsequent claims by class members. Because, as discussed above, Plaintiff is an adequately represented member of the *Willson* class, as stated in the Final Judgment and Order, and because this Court must give effect to the judgment rendered by the *Willson* Court, *res judicata* bars him from bringing the instant action.

Second, as to the injunction, the *Willson* Order provides that the judgment contained therein precludes any future lawsuits brought by members of the class and further provides that said members are enjoined from bringing any cause of action related to the claims brought by the class, or any released transactions, as defined by the settlement agreement, stating:

> All Class Members are, from this day forward, hereby enjoined from:
>
> (a) filing, commencing or prosecuting any lawsuit; or
> (b) participating as a class member in any class action against New York Life in any jurisdiction based on or relating to the facts and circumstances underlying the claims and causes of action in this action, or to the Released

Transactions (as that term is defined in the Settlement Agreement).

(*Willson* Order, at 73). The *Willson* Settlement Agreement defines "Released Transactions" as follows:

> [T]he marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies.

(*Willson* Settlement Agreement, at 18).

Parties settling a class action may include in the judgment entered on the settlement an injunction provision "specifying that the judgment will bind all class members who fail to opt out of the settlement, and will have preclusive effect in all pending and future lawsuits maintained by or on behalf of any and all class members." 3 MCLAUGHLIN ON CLASS ACTIONS Vol. 2, at § 6:31. By including in its judgment a permanent injunction enjoining class members from bringing claims related to those settled by the class, the court rendering the judgment protects its judgment from future litigation threatening said judgment. *In Re Diet Drugs*, 282 F.3d at 235; *See also Ryan v. Dow Chemical Co.*, 781 F.Supp. 902, 915-917. Furthermore, "[a]n injunction must be obeyed until modified or dissolved ... ."[16] *Stephenson v. Dow Chemical Co.*, 273 F.3d at 256 (quoting *Met. Opera Ass'n v. Local 100, Hotel Employees and Rest. Employees Int'l Union*, 239 F.3d 172, 176 (2d Cir. 2001) (citations omitted)).

---

[16]

   *Stephenson* here stands for the proposition that the injunction embedded in the settlement agreement must be enforced, unless the plaintiffs are not adequately represented members of the class.

Here, Plaintiff's Complaint alleges that "but for the representation that no further premiums would ever be due on the policies, [Plaintiff] would not have made the exchange." (Docket No. 1, at 3). Specifically, Plaintiff contends that Defendant's agent made certain representations to him and, in so doing, solicited Plaintiff to surrender the cash value of his existing life insurance policies in exchange for a new whole life insurance policy. (Docket No. 1, at 2-3). All of Plaintiff's specific claims, namely violations of the Pennsylvania UTP/CPL, breach of contract and bad faith, are premised on the representations made by Defendant's agent to Plaintiff within the defined class period. (Docket No. 1, at pp. 3-4; 5-6; 6-7). These transactions, indeed, fall within the definition of "Released Transactions" as defined by the *Willson* Order. Reading the settlement agreement on its face, there is no ambiguity that causes of action premised on the representations or solicitation of Defendant's agent in reference to transactions regarding the cash-value surrender of existing policies is precluded. Furthermore, the Court is required to give effect to the judgment of the *Willson* Court. Therefore, Plaintiff, as a class member, is enjoined by the *Willson* Order from bringing the instant action, i.e., claims based upon released transactions.

Third, the *Willson* Order included a release, which provides:

> Effective as of the Final Settlement Date, Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releasees, either directly or indirectly, on their own behalf ... any and all causes of action ... that have been, could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Member against the Releasees ... including without limitation:
>
> > (i) any or all of the acts, omissions, facts, matters, transactions or occurrences that were directly or indirectly alleged ...

> (ii) any or all of the acts, omissions, facts, matters transactions, occurrences, or any oral or written statements or representations allegedly made in connection with or directly or indirectly relating to the Release Transactions,
>
> including without limitation any acts ... relating to ...
>
> > (l) the use of an existing policy's cash value or cash-surrender value by means of surrender, withdrawal/ partial surrender or loan to purchase or maintain a policy ... .

(*Willson* Settlement Agreement, at 57-59). A "Release" is defined as "[t]he relinquishment or concession of a right, title, or claim." Blacks Law Dictionary 8th Ed. (2004). A release as part of a class action settlement agreement is a contract and is treated as an agreement between the parties to the class action litigation. *See Consolidated Edison, Inc. v. Northeast Utilities*, 332 F.Supp. 2d at 626; *Nottingham Partners v. Trans- Lux Corp.*, 925 F.2d 29, 33 (1st Cir. 1991) (noting that a release may apply to non-present class members regardless of whether that class member opposes the releases, so long as procedural safeguards are used). "A settlement releasing claims works no unwanted or unintended consequences on absent class members. Parties may be unable to predict the future issue or claim preclusive effect of an adjudication, but parties to a settlement know precisely what they relinquish. Thus, the members of a class participating in an opt-out settlement make a uniquely informed and voluntary choice." 3 MCLAUGHLIN ON CLASS ACTIONS Vol. 2, at § 6:28 (citing *In Re General Motors Corp. Pick- Up Truck Products Liability Litigation,* 55 F.3d 768, 792 (3d Cir. 1995) ("Since the plaintiff is offered the opportunity to opt-out of the class simultaneously with the opportunity to accept or reject the settlement offer ... the plaintiff knows exactly what result he or she sacrifices"); *cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)

("the Constitution does not require more to protect what must be the somewhat rare species of class member who is unwilling to execute an 'opt-out' form, but whose claim is nonetheless so important that he cannot be presumed to consent to being a member of the class by his failure to do so").

In accordance with the release embedded within the *Willson* settlement, as a class member, Plaintiff may not institute this action based upon released transactions and Defendant is released from such liability.  Because Plaintiff is a member of the *Willson* class and has alleged injury based entirely on released transactions, as discussed *supra*, as unambiguously defined in the *Willson* settlement, he has failed to state a plausible claim for relief.

Additionally, the Court finds persuasive the Supreme Court of Alabama's decision regarding a collateral attack to the *Willson* settlement in *New York Life Ins. Co. v. Robinson*, 735 So. 2d 463 Ala. 1999).  In that case, nearly identical to the instant facts, Defendant made representations to individuals who, based on these representations, agreed and were issued whole life insurance policies.  Subsequent to the *Willson* settlement agreement, in August 1996, these individuals filed suit against Defendant alleging "fraud, suppression, and deceit in connection with the sale of the policies."  *Id.* at 465.  The Court in *Robinson* held that the individuals' claim fell "within the scope of the broad language of the settlement agreement," and therefore, these individuals were precluded from litigation these claims by virtue of the *Willson* settlement.  *Id.* at 467.  The Court further held that, because all plaintiffs were members of the *Willson* class, they were bound by the terms of the settlement agreement, including its release and final order and judgment, wherein all future claims are precluded.  *Id.* at 468.  Again, Plaintiff is a member of the *Willson* class and, akin to the plaintiffs in *Robinson*, he is bound by the *Willson* Order.  As such, Plaintiff has failed to demonstrate a factual scenario giving rise to relief.

Finally, the Court notes that the Willson Court "retain[ed] jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order and Judgment, and for any other necessary purposes." (*Willson* Order, at 74). Accordingly, if Plaintiff has a claim to bring, said claim should have been brought in New York court.

In light of all of the above reasons, Defendant's motion to dismiss is granted.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Motion to Dismiss of New York Life Insurance Company [11] on all counts. An appropriate Order will follow.


<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge


Dated: March 19, 2008

cc/ecf: All counsel of record